See also D.C., 564 F.Supp. 59.

**Robert JORDAN, Plaintiff,**

v.

**GLOBAL NATURAL RESOURCES, INC., Defendant.**

Civ. A. No. C–1–82–978.

United States District Court, S.D. Ohio, W.D.

April 3, 1984.

Gene Mesh, Cincinnati, Ohio, for plaintiff.

Thomas B. Ridgley, Columbus, Ohio, for defendant.

ORDER CERTIFYING CLASS

SPIEGEL, District Judge.

This matter came on for consideration of plaintiff's motion to certify action as a class action (doc. 12), defendant's memorandum in opposition (doc. 18), and the reply memorandum of the plaintiff (doc. 23). For the reasons hereinafter stated, we conclude that this action should be conditionally certified as a class action. The class shall include:

> All persons, firms or entities, other than members of the immediate families of the executive officers and directors of the defendant, Global, who acquired the common stock of Global during the time period from June 22, 1982 to September 8, 1982.

I. *Background*

This case arises from a proxy battle for control of the defendant, Global Natural Resources, Inc. During the time relevant to this lawsuit, Global was a public limited company incorporated under the laws of Great Britain, engaged in the exploration and sale of oil and gas. Nearly all of the shares of Global were then "bearer" shares, for which there is no way to identify all of the shareholders. Consequently, Global customarily communicated with its shareholders through advertisements placed in financial publications worldwide. Global also communicated privately and through broker-dealers and financial institutions with any known Global shareholders. During the relevant period, shares of Global stock were traded on the London Stock Exchange, the Auslandsaktien Freiverkehr, an unregulated over-the-counter market in Frankfurt, Germany, and over-the-counter in the United States.

Subsequent to the filing of this action, the English High Court of Justice, Chancery Division, approved Global's application to change its domicile from England to the United States. Global is accomplishing this change of domicile through a share-for-share exchange of registered shares of Global Natural Resources, Inc. (a New Jersey corporation) for the existing bearer shares.

In April of 1982, a group of shareholders publicly announced their intention to take control of the Global board of directors at the upcoming shareholders meeting (the Requisitionists). Soon thereafter, Global

began negotiations for a take-over of the McFarlane Oil Company (McFarlane Oil). McFarlane Oil was a privately held American corporation also engaged in the oil and gas business that had been associated with Global in the past. On June 21, 1982 Global and McFarlane Oil entered into an agreement whereby McFarlane Oil was to be merged into a newly created subsidiary of Global in exchange for 3.25 million authorized but unissued shares of Global stock, plus some cash and bonds.[1] The transaction was to be completed by August 7, 1982 but was delayed pending litigation.[2]

During the summer of 1982, the incumbent directors and the Requisitionists engaged in a bitter proxy battle. Each side placed advertisements in major newspapers urging Global shareholders to vote its respective slate of directors. Global also sent letters to those shareholders it could identify through its own records or records of dealer-brokers and financial institutions. As part of its effort to remain in control of Global, the incumbent board issued a number of statements regarding the financial worth of Global and of the McFarlane Oil deal. The Requisitionists issued an equal number of statements questioning the board's management of Global and asserting that Global was paying too much to acquire McFarlane Oil just to perpetuate the control of the incumbent board of directors. The McFarlane acquisition ultimately was concluded on September 3, 1982. Global's annual meeting was held on September 13, 1982 and all but one of the former directors were reelected to the board.

Plaintiff Robert Jordan thereafter filed this class action complaint on behalf of himself and all persons who purchased shares of the common stock of defendant Global during the time period from March 20, 1982 to September 8, 1982. Plaintiff alleges that defendant issued public communications regarding the proposed acqui-sition by Global of McFarlane Oil and that such communications contained material misrepresentations and omissions which caused the price of Global common stock to be artificially inflated. Plaintiff asserts that defendant's original statements caused the value of Global stock to sell at approximately $12.75 per share and that subsequent disclosure that the transaction was unfair to Global caused the value of the stock to decline to $8.75 per share on September 8, 1982. Plaintiff alleges further that Global's negotiations with McFarlane Oil and the subsequent transfer of Global shares for McFarlane Oil shares at a value "grossly unfair" to plaintiffs and to Global, were "deceptive and manipulative acts, practices and devices intentionally done to artificially inflate the market price of the Global shares at the expense of the class, but done in order to obtain for the incumbent directors of Global the approval of the class and the stockholders of Global." The plaintiff alleges that defendant also engaged in a plan and scheme to defraud the plaintiff and the class and that all of the conduct alleged was reckless, intentional and willful and violates Section 10(b) of the Securities and Exchange Act of 1934 (the Act) and Rule 10b–5 promulgated thereunder (Count I). Plaintiff alleges further that defendant breached its fiduciary duty to plaintiff and others who purchased stock during this period of time (Count II).

## II. *Appropriateness of Class Action*

◼ The courts have recognized, in the Sixth Circuit and elsewhere, that the class action suit is an appropriate tool for resolution of securities regulation disputes. *See e.g., Mader v. Armel,* 402 F.2d 158 (6th Cir.), *cert. denied,* 394 U.S. 930, 89 S.Ct. 1188, 22 L.Ed.2d 459 (1969); *Esplin v. Hirschi,* 402 F.2d 94 (10th Cir.), *cert. denied,* 394 U.S. 928, 89 S.Ct. 1194, 22 L.Ed.2d 459 (1968). Yet the generally appropriate approach must also be specifical-

---

1. The existing law of England did not require shareholder approval of the acquisition.

2. This proposed transaction was the subject of a separate suit filed by one of the Requisitionists seeking to take control of Global. A motion to enjoin the take over was denied. *Warner v. Global Natural Resources, PLC,* 545 F.Supp. 1298 (S.D.Ohio 1982).

ly appropriate, that is, this case must meet the criteria for class action certification set out in Rule 23(a) and 23(b)(3) Fed.R.Civ.P. We turn our attention to these criteria.

■ Preliminarily, we note defendant's objection that the plaintiff has failed to set forth facts sufficient to permit a meaningful analysis of the class action certification issue. We certainly acknowledge that a plaintiff may not meet its burden of presenting adequate facts merely by parroting the requirements of Rule 23. *See Weathers v. Peters Realty Corp.*, 499 F.2d 1197 (6th Cir.1974). However, we note that several courts have advocated a liberal construction of Rule 23 and have cautioned that any error should be in favor of allowing a class action to proceed. *See e.g., Esplin v. Hirschi*, 402 F.2d 94, 101 (10th Cir. (1968), *cert. denied*, 394 U.S. 928, 89 S.Ct. 1194, 22 L.Ed.2d 459 (1969); *Steiner v. Equimark Corp.*, 96 F.R.D. 603, 607 (W.D.Pa.1983). Furthermore, the following discussion will reflect the diligence of plaintiff's counsel in discharging the responsibility of informing the court of the facts underlying the motion for class action certification.

## A. *Requirements of Rule 23(a)*

Rule 23(a) Fed.R.Civ.P. sets out the following four requirements for class action certification: (1) the class is so numerous that joinder of all members is impracticable; (2) the existence of questions of law or fact common to the class; (3) the claims of the named plaintiff are typical of the claims of the class; and (4) the named plaintiff will fairly and adequately represent the interests of the class. Of these four, the defendant takes issue with all but the commonality requirement.

■ The defendant attacks the plaintiff's motion with the contention that the numerosity requirement has not been met. Defendant argues that it is unclear whether anyone other than the dissident Requisitionists would fall within the putative class. The defendant contends that this ambiguity is fatal, citing *Sims v. Parke Davis & Co.*, 334 F.Supp. 774 (E.D.Mich.), *aff'd*, 453 F.2d 1259 (6th Cir.1971), *cert. denied*, 405 U.S. 978, 92 S.Ct. 1196, 31 L.Ed.2d 254 (1972) for the proposition that indefiniteness on the numerical issue precludes class certification. Plaintiffs respond to this criticism with objective reports of the number of shares of Global stock purchased during the class period (doc. 24, exh. 1, 2 & 3) as well as ample authority that courts may be well advised to draw the common sense conclusion, from the number of shares traded, that the members of the class are so numerous that joinder is impracticable. *See e.g., Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1039 (5th Cir.1981); *Green v. Emersons Ltd.*, 86 F.R.D. 47, 53 (S.D.N.Y.1980); *Trattner v. American Fletcher Mortgage Investors*, 74 F.R.D. 352, 356 (S.D.Ind.1976); 5 J. Newberg, *Class Actions* § 8812 (1977). As the exhibits submitted by plaintiff clearly indicate that a substantial number of Global shares were purchased between June 22, 1982 and September 8, 1982, we conclude that the numerosity requirement is satisfied.

■ Concerning the issue of the existence of questions of law or fact common to the class, the defendants offer no serious arguments. We are satisfied from an examination of the plaintiff's papers that the actions of the defendant challenged here were directed to the class generally and that those actions affected all class members in a similar manner. Thus, we conclude that the commonality requirement is satisfied. *See e.g., Steiner v. Equimark*, 96 F.R.D. 603 (W.D.Pa.1983); *Green v. Wolf Corp.*, 406 F.2d 291 (2d Cir.1968), *cert. denied*, 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969).

■ Defendant argues that the named plaintiff's claims or defenses are not typical of the claims or defenses of the class. Instead, defendant contends, the plaintiff invested for unique reasons and ignored relevant market information; in essence, defendant asserts that the plaintiff did not rely on the market, and in this respect, his claims are not typical of those of the class. We disagree.

The disagreement surrounding the typicality requirement stems from the plaintiff's deposition testimony. According to plaintiff's reply memo (doc. 23), the plaintiff testified that his purchase of Global stock was in reliance on a news article which he assumed accurately reflected the market. As the plaintiff cannot recall the specific article, defendant contends that a defense of nonreliance which is peculiarly applicable to this plaintiff precludes typicality, and therefore class action certification. Defendant also contends that the plaintiff disregarded relevant market data concerning the proxy battle and that this disregard bolsters a nonreliance defense against the plaintiff.

After consulting pertinent authority, we are of the mind that none of the possible deficiencies in the plaintiff's position leads to the conclusion that the claims of the class would not be adequately and vigorously prosecuted should we certify this as a class action. We note, while reserving judgment on the issue, that the Second Circuit has refused to distinguish between primary and secondary reliance on the market (secondary reliance being the reliance on the news publication alleged here). *Panzirer v. Wolf,* 663 F.2d 365 (2d Cir.), *cert. denied,* 458 U.S. 1107, 102 S.Ct. 3486, 73 L.Ed.2d 1368 (1982). Furthermore, we reiterate the position taken in our earlier opinion denying defendant's motion to dismiss that, in a nondisclosure case, reliance is measured by the objective standard of materiality. *Jordan v. Global Natural Resources, Inc.,* 564 F.Supp. 59, 66 (S.D.Ohio 1983); (citing *Affiliated Ute Citizens v. United States,* 406 U.S. 128, 153–54, 92 S.Ct. 1456, 1472, 31 L.Ed.2d 741 (1972); *The Toledo Trust Co. v. Nye,* 588 F.2d 202, 207 n. 21 (6th Cir.1978)). Finally, we cannot say that parties' differing interpretations of plaintiff's deposition presents such a credibility problem as to preclude his representation of the class.

■ We are satisfied that the plaintiff will fairly and adequately protect the interests of the class. Under this requirement, the issues for consideration are "the experience and ability of counsel for the plaintiffs and whether there is any antagonism between the interests of the plaintiffs and other members of the class they seek to represent." *Cross v. National Trust Life Insurance,* 553 F.2d 1026, 1031 (6th Cir. 1977). First, we have no qualms about the experience and ability of plaintiff's counsel in this case. Counsel are experienced in securities litigation, and we are impressed with the vigorous prosecution of this case to date. Second, we find no antagonism between the plaintiff's interests and the interests of the class. While the defendant has raised the possibility of differences between the plaintiff's position and the positions of other investors, there is no requirement that the situations of the plaintiff and the class be identical. *See e.g., Cohen v. Uniroyal,* 77 F.R.D. 685, 695 (E.D.Pa. 1977).

In accordance with the foregoing, we conclude that the four requirements of the Rule 23(a) are satisfied.

B. *Requirements of Rule 23(b)(3)*

In addition to the requirements of Rule 23(a), we must consider the requirements of Rule 23(b)(3). Rule 23(b)(3) provides that a class action may be maintained if:

> (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Rule 23(b)(3) Fed.R.Civ.P. Of these requirements, defendant contends that (1) questions of law or fact common to the

class do not predominate; (2) that a class action is not superior to other available methods for fair and efficient adjudication of the controversy; and (3) that the peculiar nature of the defendant company and its shares of stock present significant problems of manageability.

On the issue of the predominance of common questions of law or fact, defendant's argument is again based on the contention that individual reliance is a prerequisite to recovery in nondisclosure cases, is rebuttable, and hence, will necessitate a series of separate trials on this issue. One response to this argument is the response made above, that is that subjective reliance is not a prerequisite to recovery in a nondisclosure case. Another response is that

> Courts generally focus on the liability issue in deciding whether the predominance requirement is met, and if the liability issue is common to the class, common questions are held to predominate over individual questions.

*Dura-Bilt v. Chase Manhattan Corp.*, 89 F.R.D. 87, 93 (S.D.N.Y.1981), *quoted in Steiner v. Equimark Corp.*, 96 F.R.D. 603, 612 (W.D.Pa.1983).

■ In the instant case we believe that the liability issue is predominant over individual issues. The liability issue deals primarily with whether the defendant made such material misrepresentations and omissions as to result in maintaining an inflated value of Global stock. The individual instances in which reliance is challenged or rebutted should not constitute a bar to class action certification. *See Simon v. Westinghouse Electric Corp.*, 73 F.R.D. 480 (E.D.Pa.1977).

■ Next, defendant argues that a class action is not a superior method for fair and efficient adjudication of this controversy. In support of this argument, defendant asserts that the absence of any other actions arising from the challenged merger somehow reflects on the merit of the case. We perceive the absence of litigation differently. As the Supreme Court noted in *Deposit Guaranty National Bank v. Roper*, 445 U.S. 326, 338, 100 S.Ct.

1166, 1173, 63 L.Ed.2d 427 (1980), the class action device may be the only economically feasible ground for relief for a number of small individual claims. This is particularly so in securities fraud cases. *See generally*, 3B Moore's Federal Practice ¶ 23.-02[2.–19] (3d ed. 1982). Because the absence of other litigation may well be a reflection of such economic reality, we conclude that a class action is superior to alternative means of adjudicating this controversy.

■ Defendant also argues that Global's status, during the class period, as a foreign corporation, the bearer form of its shares, and the existence of foreign shareholders mitigate against class action certification. Dealing first with the bearer shares, defendant argues that the anonymity of shareholders inherent in such stock precludes effective notice to the class. This might be persuasive were actual notice required. However, Rule 23(c)(2) provides that class members should receive "the best notice practicable under all the circumstances, including individual notice to all members who can be identified through reasonable effort." Rule 23(c)(2) Fed.R.Civ.P. This rule is designed to afford absent class members due process rights. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950). *Hansberry v. Lee*, 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22 (1940); Advisory Committee Notes of Rule 23, 39 F.R.D. 107. It is clear that due process does not require actual notice to all class members, and constructive notice by publication will suffice to inform potential class members. *See Weinberger v. Kendrick*, 698 F.2d 61, 71 (2d Cir.1982); *cert. denied, sub nom. Coyne v. Weinberger*, — U.S. ——, 104 S.Ct. 77, 78 L.Ed.2d 89 (1983); *see also* 1 J. Newberg, *Class Actions* § 1032 (1977).

The application of these standards to the instant case reveals that the notice problems associated with the bearer shares and foreign investors do not prohibit class action certification. First, as plaintiff notes, Global has been successful in notifying its

shareholders by publication when necessary to announce shareholders' meetings and to urge election of directors. We also note that the change in Global's domicile from England to New Jersey and the resultant exchange of bearer shares for registered shares may also lead to identification of class members. Finally, there is the possibility of obtaining records of Global purchases during the class period from brokers. In sum, these facts indicate that, with reasonable effort, it will be possible to identify some members of the class, and that those members whose identity cannot be ascertained may be adequately served notice of this action by publication.

■ Defendant also complains that the existence of foreign investors renders class action certification improper since a United States District Court judgment may not be accorded res judicata effect abroad. We agree with plaintiff and cited authority that

[A]n American court need not abstain from entering judgment simply because of a possibility that a foreign court may not recognize or enforce a judgment rendered in the United States.

*Bersch v. Drexel Firestone, Inc.*, 519 F.2d 974, 996 (2d Cir.), *cert. denied*, 423 U.S. 1018, 96 S.Ct. 453, 46 L.Ed.2d 389 (1975), *quoted in Casper v. Cunard Line, Ltd.*, 560 F.Supp. 240, 248 (E.D.Pa.1983). Even assuming the appropriateness of abstention, the standard for such abstention is "near certainty." 519 F.2d at 996. Defendant has presented nothing in support of its contention that foreign courts will not recognize a judgment entered by this Court. Therefore, it is unnecessary to pursue this matter further.

### III. *Definition of the Class*

Having concluded that the requirements of Rule 23(b)(3) have been met, we consider the issue of class definitions.

Plaintiff defined the prospective class in his complaint as including:

All persons, firms or entities, other than members of the immediate families of the executive officers and directors of the defendant, Global, who acquired the common stock of Global during the time period from March 20, 1982 to September 8, 1982.

However, in his motion for class action certification, plaintiff concedes that a reduction in the class period to the time period from June 22, 1982 (the date of the public announcement of the McFarlane acquisition) to September 8, 1982 (approximate date of disclosure that McFarlane acquisition was not a good deal) is appropriate.

■ Defendant objects to the inclusion of foreign purchasers of Global stock in the class, citing *Bersch v. Drexel Firestone, Inc.*, 519 F.2d 974 (2d Cir.), *cert. denied*, 423 U.S. 1018, 96 S.Ct. 453, 46 L.Ed.2d 389 (1945). However, in *Bersch*, the defendants submitted affidavits in support of their contention that foreign courts could not recognize a United States judgment. In excluding foreign purchasers, the *Bersch* court relied on these affidavits. 519 F.2d 974 at 996–67. Unfortunately, we do not have the assistance of such affidavits. We note that language might present problems in notifying foreign class members. However, at this point we are willing to afford plaintiff's counsel with the opportunity to tackle such problems. Nevertheless, we are sensitive to the potential problems posed by the inclusion of foreign purchasers in the class. Therefore, we conditionally certify this action as a class action under Rule 23(b)(2) Fed.R.Civ.P. The class shall include:

All persons, firms or entities, other than members of the immediate families of the executive officers and directors of the defendant, Global, who acquired the common stock of Global during the time period from June 22, 1982 to September 8, 1982.

This conditional class certification may be altered or amended before decision on the merits pursuant to Rule 23(c)(1) Fed.R. Civ.P. We request that counsel address the issues relating to notice and submit proposed notice jointly to the Court by May 22, 1984.

SO ORDERED.