508 A.2d 1222

**Leonard C. MILLER and Beverly R. Miller, Administrators of the Estate of Diane K. Miller, Deceased; and all others similarly situated, Appellants,**

v.

**FEDERAL KEMPER INSURANCE COMPANY, Appellee.**

Superior Court of Pennsylvania.

Argued Dec. 16, 1985.

Filed April 28, 1986.

582

Richard C. Angino, Harrisburg, for appellants.

Clyde W. McIntyre, Harrisburg, for appellee.

Before WIEAND, OLSZEWSKI and WATKINS, JJ.

WIEAND, Judge:

Leonard C. Miller and Beverly R. Miller, the administrators of the estate of Diane K. Miller, deceased, commenced

a class action to recover post-mortem work loss benefits under Pennsylvania's No-fault Motor Vehicle Insurance Act[1] on behalf of their decedent and all others similarly situated. They appeal from an order of the Court of Common Pleas of Dauphin County which denied class certification and granted a motion by the appellee, Federal Kemper Insurance Company (Kemper), for summary judgment. The Millers have also challenged that portion of the same order which denied the petitions of Regina Kotchin and Drexel R. Bradley to intervene as representatives of the class.

On April 29, 1978, Diane Miller sustained fatal injuries as a result of an automobile accident. She was covered by a policy of no-fault insurance which had been issued by Kemper. Kemper refused to pay work loss benefits to Diane Miller's estate. The Millers, on June 22, 1982, commenced a class action on behalf of their deceased daughter and "all insureds of [Kemper] who were covered by the Pennsylvania No-Fault Act with respect to their fatal injuries ... since the time of the passage of the No-Fault Act." The Millers subsequently moved, inter alia, for class certification and for partial summary judgment on their individual claim. The trial court, after hearing, denied both motions. Later, however, the court granted a petition by the Millers for reconsideration of class certification. In the meantime, the petitions of Kotchin and Bradley to intervene in the class action had been filed. Kemper subsequently filed its own motion for summary judgment on the ground that the Millers' claim was barred by the statute of limitations contained in the No-fault law. After a second hearing,[2] the

1. Act of July 19, 1974, P.L. 489, No. 176, 40 P.S. § 1009.101 et seq., *repealed by* Act of February 12, 1984, P.L. 26, No. 11, § 8(a), effective October 1, 1984.

2. The instant case was consolidated for hearing with seven other similar class suits which had been brought by the same attorney. See: *Knetsch v. United States Fidelity and Guaranty Co.,* No. 2182–S–1982 (Dauphin Cty.); *Phillips v. The American Insurance Co.,* No. 2839–S–1983 (Dauphin Cty.); *Swank v. The Prudential Insurance Co. of America,* No. 4128–S–1983 (Dauphin Cty.); *Freeze v. Donegal Mutual Insurance Co.,* No. 2185–S–1982 (Dauphin Cty.); *Reynolds v. Nationwide*

trial court denied the Millers' petition for class certification as well as the petitions for intervention. The court also granted Kemper's motion for summary judgment thereby disallowing the Millers' claim.[3] An appeal by the Millers followed.

Appellants raise three issues on appeal: (1) whether the trial court erred by entering summary judgment for Kemper on the ground that the Miller claim was barred by the applicable statute of limitations; (2) whether the court abused its discretion by refusing to certify the class; and (3) whether the court erred by denying the petitions to intervene. We reverse the entry of summary judgment, but affirm the denial of certification. We will not review the order denying intervention because the Millers lack standing to challenge it.

## I. *Statute of Limitations*

For the entry of summary judgment, there must not only be an absence of genuine factual issues, but there must also be an entitlement to judgment as a matter of law. *Lookenbill v. Garrett*, 340 Pa.Super. 435, 439, 490 A.2d 857, 859 (1985); *Curry v. Estate of Thompson*, 332 Pa.Super. 364, 368, 481 A.2d 658, 659 (1984); *Rybas v. Wapner*, 311 Pa.Super. 50, 54, 457 A.2d 108, 109 (1983). On appeal from an order entering summary judgment, an appellate court

*Mutual Insurance Co.,* No. 2186–S–1982 (Dauphin Cty.); *Carey v. Pennsylvania National Insurance Group,* No. 2188–S–1982 (Dauphin Cty.); *Keylor v. Harleysville Mutual Insurance Co.,* No. 2189–S–1982 (Dauphin Cty.).

**3.** We note the impropriety of deciding a motion for summary judgment at a class certification hearing. Pa.R.C.P. 1707(c) specifically provides that the class certification hearing "shall be limited to the Class Action Allegations." According to the Explanatory Note to Rule 1707:

The hearing is confined to a consideration of the class action allegations and is not concerned with merits of the controversy or with attacks on the other averments of the complaint. Its only purpose is to decide whether the action shall continue as a class action or as an action with individual parties only. In a sense, it is designed to decide who shall be the parties to the action and nothing more. *Viewed in this manner, it is clear that the merits of the action and the right of the plaintiff to recover are to be excluded from consideration.* (emphasis added).

will reverse the trial court where there has been an error of law or a clear abuse of discretion. *Peters Township School Authority v. United States Fidelity and Guaranty Co.*, 78 Pa.Cmwlth. 365, 370, 467 A.2d 904, 906 (1983).

The statute of limitations applicable to a claim for post-mortem work loss benefits is contained in section 106(c)(1) of the No-fault Act, 40 P.S. § 1009.106(c)(1). See: *Guiton v. Pennsylvania National Mutual Casualty Insurance Co.*, 503 Pa. 547, 550, 469 A.2d 1388, 1389 (1983); *Kamperis v. Nationwide Insurance Co.*, 503 Pa. 536, 539, 469 A.2d 1382, 1383 (1983); *Sachritz v. Pennsylvania National Mutual Casualty Insurance Co.*, 500 Pa. 167, 177, 455 A.2d 101, 106 (1982). This section states in pertinent part:

(c) Time limitations on actions to recover benefits.—

(1) If no-fault benefits have not been paid for loss arising otherwise than from death, an action therefor may be commenced not later than two years after the victim suffers the loss and either knows, or in the exercise of reasonable diligence should have known, that the loss was caused by the accident, or not later than four years after the accident, whichever is earlier.

40 P.S. § 1009.106(c)(1). Under this statutory provision, the greatest period within which to file an action for post-mortem work loss benefits is four years from the date of the fatal accident. Here, the accident which caused Diane Miller's death occurred on April 29, 1978. The complaint in the instant class action was not filed until June 22, 1982, more than four years following the accident. Thus, unless the limitations period was tolled in the interim, the Millers' class action suit is time barred.

The Millers contend that the statute of limitations was tolled by two class actions previously commenced in Dauphin County to recover similar work loss benefits. These actions, *Nye v. Erie Insurance Exchange*, No. 5349–S–1979 (Dauphin Cty.) and *Seibel v. Allstate Insurance Co.*, No. 653–S–1981 (Dauphin Cty.), allegedly included the decedent's estate as a potential class member in the assertion of claims for work loss benefits. The *Nye* and *Seibel* actions

were brought against thirty-one insurance companies, including Kemper, which had written substantially all of the no-fault insurance in Pennsylvania. The *Nye* action was commenced on November 15, 1979 and sought to recover post-mortem work loss benefits on behalf of "all previously employed Pennsylvania residents who were insured by any of the defendants under No-Fault insurance coverage and who sustained a fatal injury within the past two years...." *Seibel* was a state anti-trust action which had been instituted on February 24, 1981 on behalf of "all individuals who were insured by any of the mentioned defendants at the time of their motor vehicle accidents which resulted in their deaths."

The United States Supreme Court, in *American Pipe & Construction Co. v. Utah,* 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713, *rehearing denied,* 415 U.S. 952, 94 S.Ct. 1477, 39 L.Ed.2d 568 (1974), addressed the issue of whether a previously filed class action was sufficient to toll the applicable statute of limitations for members of the purported class. There, the State of Utah had commenced a class action on behalf of other public bodies and agencies for federal anti-trust violations allegedly committed by American Pipe. The district court had refused to certify the class on the ground that the class lacked numerosity. Eight days later, several members of the purported class had moved to intervene. In denying these motions, the district court concluded that the claims of the class members had been barred by the applicable statute of limitations. The Court of Appeals reversed, holding that the filing of Utah's class action complaint had tolled the statute of limitations for all of the asserted members of the class.

The United States Supreme Court affirmed. In doing so, the Court examined the policies to be served by class actions and by statutes of limitations. The purpose of class actions, the Court observed, was to promote efficiency and economy of litigation by avoiding "unnecessary filing of repetitious papers and motions." *Id.* at 550, 94 S.Ct. at 765, 38 L.Ed.2d at 725. Statutes of limitations, on the other

hand, were " 'designed to promote justice by preventing surprises through the revival of claims that ha[d] been allowed to slumber until evidence ha[d] been lost, memories ha[d] faded, and witnesses ha[d] disappeared.' " *Id.* at 554, 94 S.Ct. at 766, 38 L.Ed.2d at 727, quoting *Order of Railroad Telegraphers v. Railway Express Agency,* 321 U.S. 342, 348–349, 64 S.Ct. 582, 586, 88 L.Ed. 788, 792 (1944). The Court determined that both policies would be promoted by permitting the asserted class members to intervene in the action. To hold otherwise, the Court observed, "would frustrate the principal function of a class suit, because then the sole means by which members of the class could assure their participation in the judgment if notice of the class suit did not reach them until after the running of the limitation period would be to file earlier individual motions to join or intervene as parties—precisely the multiplicity of activity which [Fed.R.C.P.] 23 was designed to avoid." *Id.* at 551, 94 S.Ct. at 765, 38 L.Ed.2d at 725. In addition, the Court said, the policies underlying statutes of limitations

> are satisfied when, as here, a named plaintiff who is found to be representative of a class commences a suit and thereby notifies the defendants not only of the substantive claims being brought against them, but also of the number and generic identities of the potential plaintiffs who may participate in the judgment. Within the period set by the statute of limitations, the defendants have the essential information necessary to determine both the subject matter and size of the prospective litigation, whether the actual trial is conducted in the form of a class action, as a joint suit, or as a principal suit with additional intervenors.

*Id.* at 554–555, 94 S.Ct. at 767, 38 L.Ed.2d at 727 (footnote omitted). The Court concluded, therefore, that "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." *Id.* at 554, 94 S.Ct. at 766, 38 L.Ed.2d at 727.

In *Crown, Cork & Seal Co. v. Parker,* 462 U.S. 345, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983), the Supreme Court extended the tolling rule of *American Pipe* to protect not only intervenors, but purported class members who later filed their own individual actions. Having determined that application of the tolling principle to individual actions would not offend the policies discussed in *American Pipe,* the Court stated: "While *American Pipe* concerned only intervenors, we conclude that the holding of that case is not to be read so narrowly. The filing of a class action tolls the statute of limitations 'as to all asserted members of the class,' not just as to intervenors." *Id.* at 350, 103 S.Ct. at 2395, 76 L.Ed.2d at 633.

The tolling principle announced in *American Pipe* and extended in *Crown, Cork & Seal* is a part of the law of Pennsylvania. The Explanatory Note to Pa.R.C.P. 1701, which defines the term "class action," states:

> This definition becomes important in determining the effect of the commencement of a class action as tolling the statute of limitations as to the members of the class other than the named representatives. It carries into effect the decision of the United States Supreme Court in *American Pipe and Construction Company v. State of Utah,* 414 U.S. 538, 38 L.Ed.2d 713, 94 S.Ct. 756 (1974), in which the Court held that the commencement of an action as a class action suspends the applicable statute of limitations during the interim period from commencement until refusal to certify as to all putative members of the class who would have been parties if the action had been certified as such.

In *Alessandro v. State Farm Mutual Automobile Insurance Co.,* 487 Pa. 274, 279 n. 9, 409 A.2d 347, 350 n. 9 (1979), the Supreme Court, citing *American Pipe,* noted via dicta that members of a class which is subsequently decertified "will not be barred by the statute of limitations, as it is suspended during the time they are allegedly parties to the class action." Similarly, a panel of this Court, in *Kruth v. Liberty Mutual Insurance Co.,* 346 Pa.Super. 147, 499 A.2d

354 (1985), adopted the tolling principle of *American Pipe* in a factual context which is similar, although not identical, to the facts in the instant case. The plaintiff there, as here, had commenced a class action to recover no-fault work loss benefits for his decedent's estate and all others similarly situated. The trial court, in granting summary judgment for the insurer, had held that the plaintiff's cause of action was barred by the statute of limitations because the suit had been started more than five years following the fatal accident. On appeal, the plaintiff argued that the statute of limitations had been tolled by a separate class action previously commenced. Applying the rule of *American Pipe,* this Court observed that the plaintiff's "claim could not be held to be time barred if a previously filed class action, in which the [plaintiff] would have been a class member, tolled the applicable statute as to his claim." *Id.,* 346 Pa.Superior Ct. at 154, 499 A.2d at 357.

In order for a prior class action to toll the statute of limitations as to subsequent claims by purported class members, the relief sought in the earlier and later actions must assert sufficiently identical causes of action so that the defendant, by virtue of the claim asserted in the original action, will have been made aware of the essential facts and nature of the claim asserted in the second action. In the instant case, there is no identity of the cause of action asserted by the Millers and the cause of action asserted by the class in *Seibel v. Allstate Insurance Co., supra.* The Millers' action sounds in assumpsit; whereas, the *Seibel* suit alleged a state anti-trust violation. The proof required for each cause of action, moreover, was totally different. The *Seibel* class action would not have given Kemper adequate notice of the Millers' substantive claim for post-mortem work loss benefits. We conclude, therefore, that the commencement of the *Seibel* action did not toll the time in which the Millers were required to institute their class action. See: *Applebaum v. State Farm Mutual Automobile Insurance Co.,* 626 F.Supp. 1299 at 1305 (M.D.Pa.1986) (also holding that the *Seibel* anti-trust action was inade-

quate to toll the statute of limitations on a claim for post-mortem work loss benefits under the No-fault Act).

The *Nye* action, however, did seek relief identical to that claimed by the Millers in the instant action. Still, it does not automatically follow from *Kruth* and *American Pipe* that the commencement of the *Nye* action was sufficient to toll the statute of limitations applicable to the Miller action. Unlike the class actions which tolled the limitation periods in *Kruth* and *American Pipe*, the *Nye* action was jurisdictionally defective. Though *Nye* was brought against thirty-one insurance companies, the representative plaintiff sought no-fault benefits from only one. The trial court dismissed the complaint against the remaining thirty insurance companies, including Kemper, because the representative plaintiff lacked standing to sue them. Although the trial court's ruling was reversed by the Superior Court, it was ultimately upheld by the Supreme Court. See: *Nye v. Erie Insurance Exchange*, 307 Pa.Super. 464, 453 A.2d 677 (1982), *rev'd*, 504 Pa. 3, 470 A.2d 98 (1983). Thus, the question presented here is one which was not addressed in either *Kruth* or *American Pipe:* whether the commencement of a class action by a representative plaintiff who lacks standing to sue a named defendant tolls the statute of limitations for a purported class member who subsequently brings an action against that defendant.

Kemper argues that because the class representative in *Nye* lacked standing, *Nye* was a nullity and ineffective to toll the period of limitations for the Millers' claim. We reject this argument. When a class action complaint is filed, the asserted members of the class are considered to be parties to the action until properly excluded. *Bell v. Beneficial Consumer Discount Co.*, 465 Pa. 225, 229, 348 A.2d 734, 736 (1975). See: Pa.R.C.P. 1701 Explanatory Note. "In that interim period, unnamed class members do have certain interests in the lawsuit. They may challenge the adequacy of representation by the plaintiff; in some circumstances, they may have a right to be informed of, or to be included in, a settlement; and, perhaps most impor-

tantly, the statute of limitations may be tolled during the period." *In re Fine Paper Litigation State of Washington,* 632 F.2d 1081, 1087 (3d Cir.1980).

> [I]t can hardly be said that a suit commenced by one who lacks standing is in any literal sense a "nonexistent" suit. It may be a defective suit, subject to a motion to dismiss or perhaps even to the court's dismissal *sua sponte,* but it is for all that no less the judicial assertion of a claim, functioning to give a defendant notice of whatever causes of action are asserted therein.

*Rose v. Arkansas Valley Environmental & Utility Authority,* 562 F.Supp. 1180, 1193 (W.D.Mo.1983). Having concluded that the *Nye* action was not a nullity, we nevertheless must determine whether it operated to toll the statute of limitations applicable to the Millers' claim.

Several courts have considered whether a class action commenced by a plaintiff who lacks standing may suspend the running of the limitations period for those purported class members who later bring their own suits. In *Haas v. Pittsburgh National Bank,* 526 F.2d 1083 (3d Cir.1975), the plaintiff instituted a class action against three banks alleging that they had assessed an excessive finance charge against credit card holders. The district court determined that the plaintiff lacked standing against Equibank, because she had not been issued a credit card by this defendant. The complaint was amended to add a nominal plaintiff who held an Equibank card, but the court held that because the amendment did not relate back to the filing of the original complaint, the claim asserted by the nominal plaintiff was time barred. In reversing the entry of summary judgment for Equibank, the Court of Appeals for the Third Circuit stated:

> Although the Court in *American Pipe* dealt with a situation where the basis for the district court's rejection of the class action was the failure to satisfy the numerosity requirement of [Fed.R.C.P.] 23, we believe the broad tolling principle it enunciated should also apply to the instant case where the district court determined after its

original certification of the class action that Haas could not represent cardholders at Equibank since she did not hold a card issued by it. Haas' timely action against all three banks provided Equibank with notice within the statutory period of the substantial nature of the claims against which they would be required to defend and also "the number and generic identities of the potential plaintiffs." These plaintiffs were in existence at the time the action was originally brought and were described as claimants in the complaint. The only change effectuated by the district court's order was the prompt addition of a nominal plaintiff who held an Equibank card.

The Court in *American Pipe* was also convinced that, to be most consistent with the federal class action procedure, the rule must be that "the commencement of a class action suspends the applicable statute of limitations as to all asserted *members of the class who would have been parties had the suit been permitted to continue as a class action.*" 414 U.S. at 554, 94 S.Ct. at 766 (emphasis supplied). Consistent with the limitation, we hold that the commencement of the original class action by Haas tolled the statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action.

*Id.* at 1097–1098 (footnotes omitted). See also: *Applebaum v. State Farm Mutual Automobile Insurance Co., supra* (class action brought by plaintiff whose claim was barred by the terms of general release tolled statute of limitations for purported members of class who later sought to intervene in order to become class representatives). Similarly, the federal district court in *Chevalier v. Baird Savings Association,* 72 F.R.D. 140, 154 (E.D.Pa.1976), following the reasoning of *Haas,* concluded that extending the tolling rule of *American Pipe* in such a situation would satisfy both the policy of preventing needless intervention in class actions and of notifying defendants of the substantive claims that might later be brought against them. See also: *Rose v. Arkansas Valley Environmental & Utility Authority, supra* (holding that, for purposes of determining whether a

class action brought by a plaintiff who lacks standing will toll the statute of limitations for the claims of its members, the appropriate focus should be upon the extent and character of the notice of the later claims which the defendant actually received from the class action).

■ We conclude that the rationale of the foregoing decisions is in harmony with the principle of *American Pipe.* Therefore, we adopt the same rationale as our own. We conclude that a class action commenced by a representative plaintiff who lacks standing is sufficient to toll the statute of limitations for the purported members of the class who later file their own actions so long as the original action provided the defendant with adequate notice of the substantive nature of their claims and the number and generic identities of the potential plaintiffs who might assert them.[4] In the instant case, the *Nye* action provided Kemper with timely notice of the nature of the Millers' claim, i.e., for post-mortem work loss benefits on behalf of their deceased daughter.

4. We reject Kemper's argument that this holding will prompt unscrupulous litigants to commence spurious class actions in order to buy time in which to find suitable class representatives. A similar argument was rejected by the Supreme Court in *Bell v. Beneficial Consumer Discount Co., supra,* 465 Pa. at 235, 348 A.2d at 739 (rejecting argument that allowing litigants to appeal from denial of class certification would encourage class actions by unscrupulous individuals attempting to blackmail defendants into settlement). The suggestion "underestimates the legal and professional resources available to combat such abuses of the judicial process." *Id.* (citing American Bar Association, Code of Professional Responsibility, Disciplinary Rules 2–103, 2–104 [suspended] (adopted by the Supreme Court of Pennsylvania, February 27, 1974); Supreme Court Rule 17–5 [now Rule 205 of the Rules of Disciplinary Enforcement] ("the Disciplinary Board of the Supreme Court of Pennsylvania)). See also: Pa.R.C.P. 1023(b) (attorney must sign a pleading to represent that there is good ground to support it and that it is not interposed for delay); Pa.R.C.P. 1024(a) (averments in pleadings must be verified by signer as true); Restatement (Second) of Torts § 674 (1977) (cause of action for wrongful use of civil proceedings). To hold otherwise would be to encourage unnamed class members to move prematurely and unnecessarily to intervene or file individual actions whenever it might appear that the named representative of the class lacks standing. As the Supreme Court noted in *American Pipe,* such a consequence would defeat the purpose of class actions.

A more difficult question is whether the *Nye* action adequately notified Kemper of the "number and generic identity" of the class defined in the Miller action. The purported class in the instant case is defined more expansively than the class defined in *Nye*. While the *Nye* action limited its class to *all previously employed insureds* who had sustained fatal injuries *after November 15, 1977* (two years prior to the filing of the complaint on November 15, 1979), the class in the instant action has been defined to include *all insureds* of Kemper who died in automobile accidents *since July 19, 1975* (the date the No-fault Act went into effect). As *American Pipe* and its progeny suggest, a previously filed class action tolls the statute of limitations only for asserted class members *who would have been parties had the suit been permitted to continue as a class action*. This requirement assures that a defendant will not be unfairly surprised by the size or general composition of the class of individuals who may later attempt to intervene or bring their own actions against the defendant. Thus, the only members of the class in the instant action who are entitled to benefit from the *Nye* action's tolling effect are those who also were in the class defined in *Nye*. See: *Applebaum v. State Farm Mutual Automobile Insurance Co., supra* 626 F.Supp. at 1304.

■ The Millers were included in the class defined in the *Nye* action. We hold, therefore, that the commencement of the *Nye* action tolled the statute of limitations for the estate of Diane Miller. The *Nye* action was also adequate to toll the statute of limitations for class members whose decedents had sustained fatal injuries after November 15, 1977. By virtue of the class defined in *Nye*, Kemper was put on notice of the number and generic identity of those in this purported class who might later bring suit against it. Were we to extend the tolling effect of *Nye* beyond the parameters of the narrow class there defined, however, we would defeat the objective of the legislature that the statutorily imposed period of limitations was designed to achieve, i.e.,

to protect insurers such as Kemper from the need to defend unforeseeable, stale claims.

The limitations period for the class defined in *Nye* remained tolled from the date of filing the *Nye* complaint on November 15, 1979 until December 30, 1983, when the Supreme Court conclusively determined that *Nye* lacked standing to sue Kemper and twenty-nine other insurance companies named as defendants. We acknowledge that a different conclusion was reached by the Federal District Court for the Middle District of Pennsylvania in *Applebaum v. State Farm Mutual Automobile Insurance Co.,* *supra.* In considering a similar claim for post-mortem work loss benefits, the court in *Applebaum* held that although the commencement of the *Nye* action operated to toll the No-fault Act's statute of limitations, the limitations period had not been suspended throughout the entire appellate process. Specifically, the court held that the statute of limitations continued to run from February 4, 1981, the date that the trial court dismissed the suit against all defendants except one for lack of standing, until December 10, 1982, when the Superior Court reversed the trial court and reinstated the complaint against all defendants. See: *id.* at 1304–05. We are constrained to reject this limitation on the tolling effect of *Nye.* To accept the conclusion that the limitations period is not tolled but continues to run during the pendency of the class representative's appeal would be to encourage each purported class member either to file an individual action or move to intervene in order to avoid extinguishment of his or her right of recovery during the appeal period. See: *Davis v. Bethlehem Steel Corp.,* 600 F.Supp. 1312, 1316 (D.Md.1985). This is precisely the multiplicity of activity that class action rules were designed to avoid. See: *American Pipe & Construction Co. v. Utah,* *supra* 414 U.S. at 551, 94 S.Ct. at 765, 38 L.Ed.2d at 725. See also: *Jiminez v. Weinberger,* 523 F.2d 689, 696 (7th Cir.1975), *cert. denied,* 427 U.S. 912, 96 S.Ct. 3200, 49 L.Ed.2d 1204 (1976) (where class certification is denied, statute of limitations is tolled for all purported class mem-

bers during the pendency of the appeal); *Davis v. Bethlehem Steel Corp., supra* (same).

The Millers commenced their action during the four year period in which the statute of limitations was suspended by the pendency of the *Nye* action. As such, their action was timely.[5] Kemper's motion for summary judgment with respect to the Millers' individual claim should have been denied.

## II. *Certification*

The prerequisites for maintaining a class action are contained in Pa.R.C.P. 1702 as follows:

One or more members of a class may sue or be sued as representative parties on behalf of all members in a class action only if

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class;

(4) the representative parties will fairly and adequately assert and protect the interests of the class under the criteria set forth in Rule 1709; and

(5) a class action provides a fair and efficient method for adjudication of the controversy under the criteria set forth in Rule 1708.

In this case, the trial court refused to certify the class because, it concluded, the Millers had failed to demonstrate that they could fairly and adequately assert and protect the

---

**5.** A claim for post-mortem work loss benefits will remain viable, at a minimum, for two years after the decedent's accrued work loss has equaled the maximum amount recoverable under the No-fault Act, i.e., $15,000.00. See: *Guiton v. Pennsylvania National Mutual Insurance Co., supra* 503 Pa. at 550–551, 469 A.2d at 1389; *Kamperis v. Nationwide Insurance Co., supra* 503 Pa. at 541, 469 A.2d at 1384. Here, less than two years had elapsed from the date of Diane Miller's fatal accident until the commencement of the *Nye* action operated to suspend the statute of limitations from running against the Millers' claim.

interests of the class. In making this determination, the court considered, as it was required to do, the factors set forth in Pa.R.C.P. 1709 as follows:

(1) whether the attorney for the representative parties will adequately represent the interests of the class,

(2) whether the representative parties have a conflict of interest in the maintenance of the class action, and

(3) whether the representative parties have or can acquire adequate financial resources to assure that the interests of the class will not be harmed. ·

The court expressed concern that the Millers' counsel, who was handling at least twenty-five similar class action suits at the same time, might be incapable of representing adequately the interests of the class. The trial court also questioned whether the Millers had satisfied the numerosity requirement for certification. However, the denial of certification was based expressly upon the court's finding that the Millers had failed to satisfy two other considerations stated in Rule 1709. They had failed to appear at the certification hearings, and on each occasion had failed to submit affidavits or depositions in support of their petition for certification.[6] In the absence of testimony from the Millers, the court concluded, it could not determine whether they had a conflict of interest in maintaining the action and whether they possessed adequate financial resources to assure that the interests of the class would be protected.

"A lower court's decision concerning class certification is a mixed finding of law and fact entitled to 'appropriate deference' upon appeal. 'Trial courts are vested with broad discretion in determining [the] definition of the class as based on commonality of the issues and the propriety of maintaining the action on behalf of the class.' Consequently, a lower court's order concerning class certification will

---

**6.** The Millers and their counsel did eventually file affidavits, but not until more than three months following the certification hearing, and almost a month after the trial court had rendered its opinion denying certification. Because such affidavits were not before the trial court when it decided the certification issue, we will not consider them here.

not be disturbed on appeal unless the court failed to consider the requirements of the rules or abused its discretion in applying them." *Janicik v. Prudential Insurance Co. of America*, 305 Pa.Super. 120, 127, 451 A.2d 451, 454 (1982) (citations and footnote omitted). See: *Nye v. Erie Insurance Exchange*, 349 Pa.Super. 490, 495, 503 A.2d 954, 956 (1986); *D'Amelio v. Blue Cross of Lehigh Valley*, 347 Pa.Super. 441, 447, 500 A.2d 1137, 1141 (1985).

█ The party seeking class certification has the burden of proving the existence of Rule 1702 prerequisites. *Klemow v. Time, Inc.*, 466 Pa. 189, 196, 352 A.2d 12, 16, *cert. denied*, 429 U.S. 828, 97 S.Ct. 86, 50 L.Ed.2d 91 (1976); *Seibel v. Allstate Insurance Co.*, 346 Pa.Super. 384, 389, 499 A.2d 666, 669 (1985); *Janicik v. Prudential Insurance Co. of America, supra* 305 Pa.Super. at 128, 451 A.2d at 454. "Once the class action allegations are well-pleaded, ... the class proponent at the class certification hearing must present evidence of the underlying facts from which the court can conclude that the five class certification requirements are met." *Id.*, 305 Pa.Superior Ct. at 129–130, 451 A.2d at 455. Although this initial burden of production is not a heavy one, it requires more than mere conjecture and conclusory allegations. *Seibel v. Allstate Insurance Co., supra* 346 Pa.Super. at 389, 499 A.2d at 670; *Kruth v. Liberty Mutual Insurance Co., supra* 346 Pa.Super. at 150, 499 A.2d at 355; *Janicik v. Prudential Insurance Co. of America, supra*, 305 Pa.Super. at 130, 451 A.2d at 455.

Our recent decisions in *Seibel v. Allstate Insurance Co., supra* and *Kruth v. Liberty Mutual Insurance Co., supra*, are controlling of the certification issue in the instant case. The plaintiffs in both of these cases had commenced class actions to recover post-mortem work loss benefits under the No-fault Act. In each case, the trial court denied class certification because the plaintiff had failed to demonstrate at a certification hearing that he would fairly and adequately protect the interests of the class. In *Seibel,* the Court

held that the conclusory allegations of the complaint, which merely recited that the requirements for certification had been met, were insufficient to satisfy the plaintiff's burden of establishing a prima facie case for certification. Substantiation by affidavits or testimony was held to be necessary. *Seibel v. Allstate Insurance Co., supra* 346 Pa.Super. at 389–390, 499 A.2d at 669–670. Similarly, in *Kruth* the Court held that it had not been error to deny class certification on the ground of inadequate representation, where the plaintiff had neither appeared at the certification hearing nor submitted affidavits, depositions, or other proof to show that he possessed adequate financial resources to protect the interests of the class, and also that he had no conflict of interest in maintaining the suit. *Kruth v. Liberty Mutual Insurance Co., supra* 346 Pa.Super. at 151, 499 A.2d at 356. Accord: *Chmieleski v. City Products Corp.,* 71 F.R.D. 118, 152 (W.D.Mo.1976) (class representatives who did not appear personally at evidentiary hearing on motion to certify class, who failed to offer any evidence which would establish that they were aware of their responsibility as class representatives, and who did not show that they either desired to or were capable of conducting the proposed class litigation failed to demonstrate that they were adequate class representatives).

■ In the instant case, the only testimony offered at the certification hearing was intended to establish the competency of counsel. As one court has observed, however,

[t]he class is entitled ... to more than competent counsel. It must also be assured that it will have an adequate representative, one who will check the otherwise unfettered discretion of counsel in prosecuting the suit and who will provide his personal knowledge of the facts underlying the complaint. The class is entitled to a representative who is more than "a key to the courthouse door dispensable once entry has been effected." *Saylor v. Lindsley,* 456 F.2d 896, 900 (2d Cir.1972). [A] plain-

tiff's evident willingness to rely on counsel's ability to protect the interests of the class is inconsistent with the participation required of an adequate class representative.

*Weisman v. Darneille,* 78 F.R.D. 669, 671 (S.D.N.Y.1978) (citations partially omitted). See: *Janicik v. Prudential Insurance Co. of America, supra* 305 Pa.Super. at 140, 451 A.2d at 461 (evidence of class plaintiff's disregard of duties, abdication to the unfettered discretion of class counsel, or of having been solicited to be class representative by counsel who are conducting the suit for their own gain, will all weigh against the named party's adequacy as a representative). Moreover, although evidence was presented in the instant case which suggested that counsel's law firm possessed adequate financial resources to conduct the class action, no evidence was offered to demonstrate that the Millers had the financial ability to prosecute the claim adequately on behalf of the entire class. Likewise, no evidence was offered to establish that the Millers had no conflict of interest that would hinder them in maintaining the action on behalf of the class. The only "proof" before the trial court on these points was the conclusory allegation in the Millers' complaint that "[t]he representative parties will fairly and adequately represent the class in that competent counsel has been retained, has no potential or actual conflict or [sic] interest with other possible members of the class, and can acquire financial resources to insure the interest of the class will not be harmed." As the Court in *Seibel* observed, however, the class proponent cannot satisfy his burden of presenting adequate facts merely by parroting the rule's requirements for certification. See: *Seibel v. Allstate Insurance Co., supra* 346 Pa.Super. at 390, 499 A.2d at 670. Accord: *Jordan v. Global Natural Resources, Inc.,* 102 F.R.D. 45, 49 (S.D.Ohio 1984); *Hauck v. Xerox Corp.,* 78 F.R.D. 375, 377 (E.D.Pa.1978); *Martinez v. Bethlehem Steel Corp.,* 78 F.R.D. 125, 127 (E.D.Pa.1978). The trial court, therefore, did not abuse its discretion when

it denied certification because of the Millers' failure to establish the adequacy of their representation.

## III. *Intervention*

Regina Kotchin and Drexel Bradley filed petitions to intervene in the Millers' class action in order to be substituted as representatives for the class. Kotchin's petition recited the following facts: the name and address of the decedent, the decedent's status (age and occupation), the administrator of the decedent's estate, the identification of Kemper as insurer, the date of the accident, the date that Kemper was notified of the accident, and the number of insured vehicles in the decedent's household. The same information was recited in Bradley's petition, and also the following:

> Petitioner is such person who could have joined as original party in the action or could have been joined therein and the determination of the instant action may affect legally enforceable interests of such person.

> Petitioner is a party to this action and wishes to intervene as a party plaintiff. If he is permitted to intervene, petitioner will seek the same relief requested in the already filed complaint and petitioner specifically adopts all pleadings thus far filed in the pending action.

Kemper filed replies to both petitions which contained general objections to the sufficiency of the pleadings and the standing of the petitioners to act as class representatives. Both Kotchin and Bradley also failed to appear at the hearing scheduled on their petitions. As a result, the trial court denied intervention, holding that the petitioners had failed to substantiate the allegations in their petitions, which, standing alone, were insufficient to support intervention.[7] Kotchin and Bradley have not appealed from the denial of their petitions to intervene. However, the Millers argue in their appeal that the trial court abused its discre-

---

7. Like the Millers, the petitioners did not file affidavits in support of their petitions until after the trial court had rendered its decision to deny intervention.

tion when it denied the Kotchin and Bradley petitions for intervention.

We conclude that appellants lack standing to raise this argument. As a general rule, only the party seeking to intervene in a pending class action has standing to appeal from an order denying intervention. See: *Jackson v. Hendrick*, 72 Pa.Cmwlth. 63, 68–69 n. 9, 456 A.2d 229, 232 n. 9 (1983) (allocatur denied). See also: *Seibel v. Allstate Insurance Co., supra* 346 Pa.Super. at 388 n. 2, 499 A.2d at 668 n. 2. The reason for the rule is that the would-be intervenor is the only party having a direct interest in the issue being litigated. See: *John G. Bryant Co. v. Sling Testing & Repair, Inc.*, 471 Pa. 1, 16, 369 A.2d 1164, 1171 (1977).

So in the instant case, the only parties having a direct interest in the order denying intervention are those who sought to intervene. The appellants and their claim are not in any way affected by the denial of the Kotchin and Bradley petitions. Similarly, it does not appear that any members of the class have been aggrieved by the trial court's order; their claims have not been affected adversely by the order denying intervention by the petitioners. For these reasons, we do not address the intervention issue.

The trial court's denial of class certification is affirmed. The granting of summary judgment in favor of Federal Kemper Insurance Company, however, is reversed, and the claim of Leonard and Beverly Miller is remanded for further proceedings consistent with this opinion. Jurisdiction is not retained.

## JUDGMENT

ON CONSIDERATION WHEREOF, it is now hereby ordered and adjudged by this Court that the Judgment of the Court of Common Pleas of Dauphin County is affirmed in part and reversed in part. The claim of Leonard and Beverly Miller is remanded for further proceedings consistent with this opinion. Jurisdiction is relinquished.